# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DALE ENDRIES,

        Petitioner,

v.                                                             Case No. 10-C-739

UNITED STATES OF AMERICA,

        Respondent.

## DECISION AND ORDER

This § 2255 action is now before me after two rounds of briefing and an evidentiary hearing on the petitioner's claim that his attorney provided ineffective assistance in the course of his representation of him during the underlying criminal proceedings. Based on the entire record in the underlying matter, as well as the evidence presented at the hearing, I now conclude for the reasons set forth below that the motion to vacate should be denied and the case dismissed.

## I. BACKGROUND

On October 28, 2008, Petitioner Dale Endries pled guilty to one count of mail fraud and one count of money laundering pursuant to a written plea agreement. Endries' guilty plea was, from the beginning, a foregone conclusion. Endries was employed as the Controller/Accountant of the Oneida Golf and Riding Club in Green Bay, Wisconsin from 1990 until he was terminated in April 2007 in the face of substantial operating losses. Analysis of checks drawn on the Club's operating accounts revealed that between 2001 and 2007 Endries had embezzled more than $2.6 million from the Club, most of which transferred directly by check from the Club's account to Endries' Home Equity Line of Credit (HELOC) account at his personal bank. Though the checks drawn on the

Club's account required a countersignature, Endries used a signature stamp of a past president of the Club to meet this requirement.

Endries used the proceeds of his crime to support an opulent lifestyle, which included expensive cars, Carribean vacations, a Cancun condominium, and a $1.25 million dollar home. The money laundering count was based on a series of transactions in which money was wired from his HELOC account to the account of a business entity he had established, then to an account he held in a New York bank from which it was wired to a Mexican bank where it was used as his final payment on his condominium. The money taken from the Club's account was easily traced to Endries' HELOC account, and he gave a full confession when law enforcement first confronted him. In fact, from the beginning he told law enforcement he felt terrible about what he had done, was glad his secret was finally out, and planned to throw himself on the mercy of the court. It was only after his initial confession and at the urging of law enforcement that Endries retained counsel. The attorney he retained was Attorney John Miller Carroll.

Attorney Carroll concluded from the outset that Endries had no defense and agreed with Endries that a strategy of restitution and remorse offered the best hope for leniency. Toward that end, Endries along with counsel met with law enforcement on several more occasions to assist in identifying the checks that represented misappropriated funds. Endries also provided some assistance in locating and liquidating property acquired with the misappropriated money. Attorney Carroll negotiated as favorable a plea agreement as he could under the circumstances, and the matter was set for a change of plea hearing. Among other provisions, the plea agreement contained a waiver of appeal rights. During the plea colloquy, AUSA Tammy Jo Hock brought the appeal waiver provision to the Court's attention, and the Court specifically went over it with Endries,

providing examples to illustrate each exception, and asked if he understood it. Endries stated he did and proceeded to enter his plea of guilty, whereupon the matter was set for sentencing.

The Court sentenced Endries to seventy-one months imprisonment, the high end of the sentence range under the United States Sentencing Guidelines. The only issue concerning the Guidelines that was in dispute was whether the two-level enhancement under U.S.S.G. § 3B1.3 for abuse of a position of trust applied. The Court overruled Endries' objection and found that the enhancement applied. The Court also awarded Endries the two-level downward adjustment for acceptance of responsibility, and the additional one-level downward adjustment on motion of the Government. The Court declined Endries' request that it give further consideration to his remorse and acceptance of responsibility in its 18 U.S.C. § 3553 analysis and impose a below Guideline sentence, however. In light of the lengthy period of time over which Endries had been stealing from his employer, the magnitude of the loss he had caused, its impact upon the Club and its employees, and what he had done with the money, the Court rejected Endries claim of sincere, heartfelt, and extraordinary remorse:

> Under these circumstances, there was such a clear paper trail that the acceptance of responsibility that Mr. Endries wants to receive credit for amounts to nothing more than acknowledgment of the obvious. Mr. Endries did not claim that black was white when he was caught red-handed. For that he receives a two-level downward adjustment for acceptance of responsibility under the guidelines. But I don't see the kind of sincere remorse that would have caused him to come in perhaps when things were turning downward, the financial condition was becoming desperate at the country club and make admissions and try to turn things around.

(Sentencing Tr. at 42-43.)

Endries immediately appealed his conviction and sentence, but moved to dismiss the appeal when appellate counsel advised him it was barred by his appeal waiver. He then filed the instant

motion to vacate his conviction pursuant to 28 U.S.C. § 2255, claiming that his attorney had erroneously advised him that he would be able to appeal the Court's Guideline determination, notwithstanding his appeal waiver. In support of his motion, Endries filed an affidavit from Attorney Carroll in which he admitted he told Endries that he would be able to appeal the Court's ruling on the abuse of position of trust enhancement.

This Court dismissed the § 2255 petition, concluding that Endries' sworn testimony eliminated any prejudice caused by his attorney's pre-hearing ineffective assistance (assuming Endries' allegations to be true). In other words, even if he had in fact received incorrect legal advice from his counsel prior to the hearing, this Court disabused him of any misunderstanding he may have had about the effect of the appeal waiver during the plea colloquy, and Endries agreed to proceed under the terms he had now been apprised of. Thus, there was no prejudice from counsel's incorrect legal advice.

Following the dismissal, however, Endries asked for reconsideration. He asserted that not only was his counsel's pre-hearing advice incorrect; he claimed that counsel told him, after the plea hearing, that he would still be able to appeal despite what this Court told him during his plea hearing. This Court then ordered an evidentiary hearing to address the Petitioner's unusual claim that his attorney, John Miller Carroll, gave him erroneous advice that contradicted the information that this Court gave Endries during his plea colloquy.

## II. ANALYSIS

To the extent that Endries' allegations in support of his § 2255 motion are in direct conflict with his Rule 11 sworn statements, he "must overcome the presumption of verity that attaches to the statements made at the Rule 11 colloquy." *United State v. Suggs*, 374 F.3d 508, 520 (7th Cir.

4

2004). The Seventh Circuit emphasized the conclusive effect of a defendant's responses during a plea colloquy in *United States v. Stewart*:

> Because many defendants seem to be under the misapprehension that a guilty plea is just provisional, and an oath to tell the truth means nothing, let us be clear. A district judge may permit a defendant to withdraw the plea if the judge finds convincing the defendant's reasons for lying under oath, but because the district judge possesses considerable discretion in this regard, . . . . a defendant has no chance of success on appeal when the judge elects to treat freely given sworn statements as conclusive. Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard. A defendant has no legal entitlement to benefit by contradicting himself under oath. Thus when the judge credits the defendant's statements in open court, the game is over. . . . . There will be no further evidentiary hearing, and an appeal is pointless (indeed, frivolous).

198 F.3d 984, 987 (7th Cir. 1999) (citations omitted). Applying these principles here, Endries' claims fail. Consideration of the testimony presented at the hearing on his petition only confirms this conclusion.

**A. Regardless of the Timing of Counsel's Advice, the Plea Colloquy Controls**

Although I ordered an evidentiary hearing to address the factual issues raised by Endries' motion for reconsideration, I first explain my conclusion that Endries's § 2255 motion should be denied as a matter of law. My principal reason for this conclusion is that Endries' present argument is wholly undermined by Endries' own behavior and statements.

The key piece of information at issue here is the existence and effect of the plea agreement's appeal waiver provision. Endries now asserts that this information was material to his decision to plead guilty. Specifically, if he had known the truth about the waiver – that it precluded the appeal he now apparently wishes to file – then he would not have accepted the agreement's terms. Clearly, as I already concluded, any pre-hearing advice he may have received could not have prejudiced him,

5

since the plea colloquy and his own oral acknowledgments about the appeal waiver superceded anything that happened earlier. As for the alleged post-hearing advice given by Attorney Carroll, Endries asserts that he was prejudiced because he would have moved to withdraw the plea but for his lawyer's reassurance that the judge was wrong and that he still maintained the right to appeal. In Endries' view, the fact that his lawyer gave him bad advice *after* the hearing nullifies the affect of his sworn testimony that he understood the appeal waiver because it prejudiced his ability to move to withdraw the plea.

Upon further examination of Endries' claim, it becomes clear that the timing of his lawyer's allegedly ineffective assistance is not material to the outcome here. This is because the story told by Endries is entirely inconsistent with his claim that he would have moved to withdraw the plea. Endries argues that, following the plea hearing, he would have immediately moved to withdraw his plea except for the fact that his attorney gave him bad advice after the plea hearing. Yet of course Endries did know the truth *during* his plea hearing and acknowledged as much under oath. A motion to withdraw the plea makes sense only if one first enters the plea without understanding the consequences. Given that Endries learned he was giving up his right to appeal during the hearing, and given that he acknowledged that fact and stated that he understood it, it does not make sense to suggest that he would have later moved to withdraw that very same plea on exactly the same grounds. In other words, if the appeal waiver had actually been material to Endries, he would not have testified that he understood and accepted its implications – he would not have entered his plea in the first place. His claim that he would later have moved to withdraw his plea is wholly inconsistent with his responses during the hearing and in particular his entry of a guilty plea immediately after having the very provision explained that he now claims he did not understand.

6

Endries' claim that the appeal waiver was material to his plea decision is not just inconsistent with his argument, of course, it is in direct contradiction to his sworn testimony. As noted in previous rulings, the appeal waiver was not a minor issue that could have been overlooked by the Petitioner. After the appeal waiver was specifically flagged for discussion during the hearing by AUSA Hock, this Court told Endries that "the plea agreement also provides that you are giving up or waiving, as part of this agreement, your right to appeal or to file post-conviction motions." (Case No. 08-CR-208, Dkt. # 51 at 18.) Endries confirmed that he understood. "In the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster,* 403 F.3d 216, 221 (4th Cir. 2005). In so holding, the Fourth Circuit cited an example from its earlier jurisprudence. In *United States v. White,* the defendant alleged that he believed, due to a promise from the prosecutor and advice from his counsel, that his plea agreement contained a conditional appeal waiver that allowed him to appeal the denial of his suppression motion. 366 F.3d 291, 293 (4th Cir. 2004). That turned out to be incorrect. In his § 2255 motion, the government conceded that the defendant's attorney had provided ineffective assistance. The plea agreement did not state that he maintained a conditional appeal right, but neither did it inform him explicitly that he was waiving such a right. In addition, the district court's plea colloquy did not expressly inform him that by pleading guilty he waived his right to appeal the suppression motion. The Fourth Circuit, over a dissent, concluded that these factors required the judge to hold an evidentiary hearing on the § 2255 motion.

The contrast with the present case is obvious. In *White,* the plea colloquy did not adequately alert the defendant to the truth about his plea and its waiver of his appeal rights. "Nor did the

7

district court orally clarify the issue during the Rule 11 hearing. The court never advised White that by entering into a guilty plea he waived his right to appeal." *Id.* at 299. Here, by stark contrast, the matter was raised and explained to Endries, and he indicated he understood and assented. His current statements directly contradict what he claimed while under oath during his plea hearing, and counsel's alleged ineffectiveness does not create an extraordinary circumstance justifying relief.

This line of reasoning is not limited to the Fourth Circuit, of course. In this Circuit, the court of appeals rejected a defendant's attempt to withdraw his plea on the basis of ineffective assistance of counsel:

> What Stewart principally wants is an order requiring the district court to hold a hearing to investigate the possibility that Stewart's lawyer told him that he would receive a maximum of 60 months' imprisonment. That advice, if given, would have been ineffective assistance of counsel, Stewart insists; and whether it was given is a question of fact that only a hearing can explore. The fundamental problem with this position is that Stewart has already had one opportunity to state, under oath and in the presence of the district judge, whether his attorney gave such defective advice. That opportunity was the plea hearing, and Stewart swore that no such advice had been given.

*United States v. Stewart,* 198 F.3d 984, 986 (7th Cir. 1999).

The same holds true here. If Endries now said that he had been coerced, say, by a death threat, such a claim might warrant further investigation to determine the voluntariness of the plea. But when the only claim is ineffective assistance of counsel, and when that alleged deficiency is cured in open court through the colloquy – which, of course, is one of the purposes of conducting a plea colloquy – the defendant cannot undo his own choice to proceed to plead guilty.

This is true even when the bad legal advice allegedly occurs after the hearing. Recall that Endries has asserted that the prejudice resulting from counsel's post-hearing ineffective assistance was his inability to file a motion to withdraw his plea. Under *Stewart,* a motion to withdraw the

8

plea would have been denied. In other words, *even if* Endries could make out an involuntariness claim here, a point I rejected above on the basis that it was wholly inconsistent with his behavior and statements on the record, he would not have succeeded in any motion to withdraw his plea. For that reason, the fact that the incorrect legal advice occurred both before and after the hearing is immaterial.

In sum, Endries' motion must be denied. On its face, his argument that the plea waiver issue was material to him is belied by his own conduct in proceeding to enter his guilty plea after the Court explicitly disabused him of the very misunderstandings he now claims caused him to enter his plea. This means that any incorrect legal advice he might have received about the appeal waiver after the hearing did not prejudice him. In addition, his present argument contradicts his statements in open court that he understood his appeal rights. For these reasons, I conclude that Endries' § 2255 motion must be denied as a matter of law.

**B. Endries' Version of Events is Not Credible**

Notwithstanding my initial conclusion that Endries § 2255 motion was barred by his appeal waiver, I appointed counsel and held had evidentiary hearing, perhaps in an abundance of caution, based on the extraordinary fact that Endries' motion was supported by an affidavit from his attorney in which counsel admitted he had misinformed his client about his right to appeal. Having now heard the evidence, I am satisfied that the evidence produced during the evidentiary hearing also compels dismissal of the petition, and for similar reasons as those addressed above. Primary among these reasons is my conclusion that the petitioner's version of events is not credible. Instead, it appears very likely that he seized on the appeal waiver issue only after he received a sentence in excess of what he expected. While he was willing to state that he agreed with his loss of appeal

rights prior to receiving his sentence, he changed his tune once he received a longer sentence than he expected. It was only then that the loss of an appeal right loomed large. Against that backdrop, Endries' story about his discussions with his attorney was not credible.

To begin with, as noted above, Endries claimed that the absence of an appeal waiver was a material aspect of his decision to plead guilty, yet when told in open court of this provision, he stated that he understood and proceeded to enter his guilty plea. Endries wants the Court to believe that he was so nervous and fearful of the proceedings that he did not understand what the Court was asking him and simply answered "yes" to each question. I find his testimony not credible.

Mr. Endries was not a youthful offender with no education or experience in the important affairs of life. At the time of the plea hearing, he was forty-seven years old, had two associate degrees in accounting and business administration, had been a controller at a credit union before his seventeen-years employment as controller of the Club, and owned an accounting and leasing business. Moreover, he had over a course of years maintained the trust and confidence of his employer while systematically embezzling large amounts of money on an ongoing basis. As I noted at the sentencing hearing, "Mr. Endries appears to have been a con man, and he conned the Oneida Golf and Country Club for six years at least. . . . [C]ertainly for six years, he conned those who were seeing him day in and day out, was able to steal this much money right under their noses." (Sentencing Tr. at 41.) The calculated manner in which he committed his crime and brazenly spent the proceeds to support an extravagant lifestyle belie his claim that the fear and anxiety of going to court rendered him completely incapable of understanding and intelligently responding to the Court's questions.

That Endries was listening to and understood the Court's questions is also clear from a review of the transcript of the plea hearing. While it is true that most of his answers were either "yes" or "no," his answers were responsive to the questions asked. In other words, he didn't answer "yes" to a question that warranted a "no" or vice versa. He explained what a jury trial was acknowledged he had read over the plea agreement, discussed it with his attorney, fully understood it, and wished to be bound by it. (Plea transcript at 5-6.) Moreover, contrary to his testimony that his attorney advised him during the plea hearing that he would still be able to appeal, there were no pauses in the recording that would have allowed for consultation.

In addition, testimony at the evidentiary hearing revealed the substance and context of Endries' thought process and overall approach to his criminal prosecution. His attorney testified that before he had first met with him, Endries had already confessed to the FBI and wanted to continue cooperating. Endries met with the FBI several more times with counsel prior to his plea. It was undeniable that Endries was guilty: the FBI had evidence of more than 150 company checks going in to Endries' personal accounts, and he never contested his guilt for the crimes charges. In short, this was not an individual for whom an appeal was foremost in his mind. The sensible approach was exactly the one Endries pursued: cooperate, plead guilty, and hope for consideration at sentencing. Endries essentially had no leverage, and he knew it. Trial would have served no purpose other than to take away his ability to attempt a credible expression of remorse and a willingness to accept responsibility for his crimes. Under these circumstances, Endries' claim that his right to appeal was a game breaker is not credible.

Endries argues that even if his guilt were established conclusively, he would still have wanted the right to appeal his sentence. In particular, he received an enhancement for abuse of trust, and he alleges that he would have wanted to appeal that determination. The alleged confusion arises

11

out of the term "statutory maximum." In discussing the appeal waiver with Endries, I explained that there were three exceptions to the appeal waiver. One of these exceptions allowed an appeal if I imposed a sentence in excess of the statutory maximum. I explained: "Now the statutory maximum here, as I said, is 30 years. So if I imposed a sentence of 35 years, you could appeal that." (Dkt. # 25, Ex. 6 at 18.) At the hearing in this § 2255 case, Attorney Carroll testified that he believed instead that the "statutory maximum" meant the advisory Sentencing Guidelines range rather than the maximum penalty imposed by statute. Thus, despite the example I used in the colloquy, Attorney Carroll testified that he believed Endries would be able to appeal if I sentenced him merely to an above-guidelines sentence rather than an above-statute sentence.

Endries points to this testimony and Carroll's affidavit as an obvious indicator of ineffective assistance. I do not find Attorney Carroll's testimony or affidavit credible, however. On the stand, Attorney Carroll contradicted the statement in his affidavit that he assured Endries after the plea hearing and after the Court's explanation that he could appeal notwithstanding the appeal waiver. Attorney Carroll denied he had advised Endries about the effect of the appeal waiver either during or immediately after the plea hearing, and given the Court's explanation during the hearing, I do not believe even an attorney without Attorney Carroll's experience could have still believed that a guideline error by the Court could have been appealed in light of the waiver. Attorney Carroll also testified that Endries only told him of his desire to appeal after sentencing, contrary to the implication in Paragraph 2 of his affidavit that the discussion had occurred earlier. When questioned further about his affidavit, Attorney Carroll suggested that he did not have a specific recollection of the events but relied upon what Endries told him had occurred. Endries had sent him an affidavit and, although Carroll apparently modified it, he assumed Endries sequence of

events was essentially correct. Given Attorney Carroll's contradictions and inconsistencies, I do not find his testimony credible. His testimony revealed a surprising carelessness with the facts concerning what he had told his client and when.

A further layer of doubt arises upon review of the other context that allegedly caused the confusion. Attorney Carroll testified that at a meeting with AUSA Hock, she told him that Endries would have maintained his right to appeal after pleading guilty. AUSA Hock vigorously disputed this version of events, and indeed it is difficult to believe that Carroll's story carries any water. The AUSA was the initiator of the plea agreement and its appeal waiver clause. She would have had no reason to lie about its terms to defendant's counsel, nor any expectation that he (an adverse party's representative) would rely on the prosecutor's description of the agreement. This is underscored by the fact that it was AUSA Hock who pointed out the appeal waiver provision to the Court during the plea colloquy. Had she wanted to sneak a provision through under the radar, she would not have highlighted it in open court while Endries still had the chance to object. The whole story about AUSA Hock's involvement in the confusion is fundamentally incredible.

In sum, the testimony at the hearing convinced me that whatever confusion Carroll may have had at one time about the appeal waiver, Endries received an accurate and complete explanation of its effect at the plea hearing, indicated he understood that explanation, and proceeded to enter his plea of guilty. The issue was not raised again until after sentencing when, unhappy with his sentence, Endries decided he wanted to appeal. Endries has not presented credible evidence that despite the Court's explanation of the appeal waiver provision during the plea colloquy, he did not understand its effect. Regardless of whether his attorney's earlier explanation of the provision was deficient, Endries suffered no prejudice once the Court explained what it meant.

**C. Endries Additional Claims Also Fail**

Appointed counsel added additional claims for relief in an amended § 2255 petition, but they all suffer from the same deficiency. Endries claims in his amended petition that his attorney failed to investigate a defense, failed to adequately explain the plea agreement, guaranteed he would receive at most three years and end up serving only half and that his plea was not knowing and voluntary. Each of these claims is also belied by the plea colloquy or expressly waived by the plea and, indeed, counsel concedes that the evidence presented at the hearing do not support them. The Court concludes they have been abandoned and declines to consider them further. For these reasons and those given earlier, I conclude the petition must be **DENIED** and the case **DISMISSED**.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983). If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3).

Here, despite my conclusion that his claim ultimately fails, I conclude that the petitioner has made a substantial showing of a denial of a constitutional right as to his claim that his trial counsel provided ineffective assistance. Accordingly, the certificate of appealability will be granted as to that claim.

**SO ORDERED** this ___20th___ day of May, 2011.

                                                 s/ William C. Griesbach
                                                 William C. Griesbach
                                                 United States District Judge